## IN THE MATTER OF ROBERT B. ANTONELLI.

Suffolk. April 9, 1999. - June 11, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Register of Probate. Supreme Judicial Court,* Removal of register of probate. *Practice, Civil,* Proceeding for removal of register of probate. *Witness,* Credibility. *Evidence,* Credibility of witness. *Constitutional Law,* Separation of powers. *Words,* "Public good."

The public good required removal from office of the Register of Probate of Middlesex County pursuant to this court's inherent constitutional authority, and pursuant to G. L. c. 211, § 4, where, on the record of disciplinary proceedings, the hearing officer's findings of fact warranted his conclusion that the register had violated the Code of Professional Responsibility for Clerks of the Courts, S.J.C. Rule 3:12, as appearing in 407 Mass. 1301 (1990). [647-649]

FORMAL CHARGES filed in the Supreme Judicial Court on October 15, 1997.

The case was submitted on brief.

*Lawrence T. Perera, Diane C. Tillotson & Joseph L. Bierwirth* for Committee on Professional Responsibility for Clerks of the Courts.

WILKINS, C.J. In November, 1996, Robert B. Antonelli was elected Register of Probate of Middlesex County, and in January, 1997, he assumed that office. On October 15, 1997, this court's Committee on Professional Responsibility for Clerks of the Courts (committee) filed formal charges against Antonelli pursuant to S.J.C. Rule 3:13, as appearing in 407 Mass. 1309 (1990). On October 28, 1997, on motion of the committee, the Justices suspended Antonelli from his duties as register of probate pending resolution of the formal charges.

This court appointed a hearing officer who conducted hearings at which special counsel for the committee and counsel for Antonelli presented evidence. On October 26, 1998, the hearing officer filed proposed findings of fact and, based on his findings on two allegations against Antonelli, he recommended that An-

tonelli be removed from office because of "varying degrees of improper conduct, which took place over the ten month period that Mr. Antonelli was in office." Antonelli filed objections to the report and recommendation. The committee held a hearing on the hearing officer's recommendation. Antonelli submitted a document in which he preserved his objections to the report and further urged that, if discipline were to be imposed, it be in the form of a public reprimand supplemented by the imposition of certain conditions on his conduct as register.

The committee adopted the ultimate findings of the hearing officer and concluded that Antonelli had

> "engaged in wilful misconduct in office, conduct that is prejudicial to the administration of justice, conduct unbecoming a Clerk-Magistrate that brings the office of Clerk-Magistrate into disrepute, and conduct that violates the Code of Professional Responsibility. Mr. Antonelli, by his actions, has demonstrated his disregard for the integrity and impartiality of the courts. Such conduct warrants the imposition of disciplinary sanctions."

The committee recommended that Antonelli be removed from office.

We summarize the hearing officer's ultimate findings. On the first allegation, concerning Antonelli's lack of impartiality and his failure to give the appearance of impartiality, the hearing officer found by the

> "standard of clear and convincing evidence [required by Rule 8 (G) of the Rules of the Committee on Professional Responsibility for Clerks of the Courts] that Mr. Antonelli has failed to give the appearance of impartiality and has failed to perform his duties impartially by conveying the impression that certain persons were in a special position to influence the Register of Probate. . . .

> "Mr. Antonelli used the influence of his office to promote his personal interests, by allowing his relationship with or personal feelings about certain individuals to affect the performance of his duties. . . .

> "Additionally, I find that Mr. Antonelli attempted to use his influence in the Rosenberg v. D'Ortona matter, which

was of personal interest to him. Having personal possession of the non-impounded divorce file failed to give the appearance of impartiality. I also find that Mr. Antonelli inquired about the stipulation in the case in an attempt to retaliate against Ms. D'Ortona for taking a [G. L. c.] 209A restraining order out against him. . . .[1]

"[T]he conduct engaged in by Mr. Antonelli amounted to willful misconduct in office, willful conduct that, although not always related to his duties as Register of Probate, brings the Office of the Register of Probate into disrepute.

"That he did not follow through with the threats he made is of no consequence and is not the issue. That he threatened to use the power of his office for his own personal gain, failed to create the appearance of impartiality, and gave members of the public the impression that he was able to influence the outcome of his case and their employment status is sufficient.

---

[1]From among numerous incidents that support the hearing officer's ultimate conclusions on the first allegation, we recite the following. On September 5, 1997, Judge Sheila E. McGovern, First Justice of the Middlesex Probate and Family Court, issued a G. L. c. 209A restraining order against Antonelli at the request of Deborah D'Ortona. At 2:30 A.M. on the next day, two Woburn police officers went to Antonelli's home to serve papers on him. The hearing officer made the following findings as to what next happened:

"Mr. Antonelli let the officers into his apartment after they rang the buzzer. Mr. Antonelli showed the Woburn officers his credentials. Mr. Antonelli demanded, 'What is this all about? What are you doing here? This is ridiculous.' Mr. Antonelli further stated, 'Do you know who I am? Who issued this?' Mr. Antonelli looked at the paper that had been served upon him and at the signature on the paper and said, 'This is ridiculous. We will get to the bottom of this right now.' Mr. Antonelli left the room and when he returned he showed the officers his address book and said, 'Do you see this name right here?' and pointed to Judge Sheila E. McGovern's name. He picked up the telephone and said, 'Hello, Judge, this is Robert Antonelli.' There was a long pause. Neither of them said anything. Then Judge McGovern said to him, 'If you are calling me to find out if I issued that order, I did.' There was another long pause. Mr. Antonelli did not say anything and Judge McGovern said to him, 'I do not think that we should be having this conversation.' After another pause, Mr. Antonelli hung up the telephone, and then Judge McGovern hung up her telephone."

"Additionally, Mr. Antonelli's conduct was prejudicial to the administration of justice and was conduct unbecoming a Register of Probate such that it brought the office of Register of Probate into disrepute. I find that Mr. Antonelli's conduct violates Supreme Judicial Court Rule 3:12, Canons 3(A) (1), 4 (A), and 4 (B) [as appearing in 407 Mass. 1301 (1990)]."

On the second allegation, which alleged Antonelli's mistreatment of his staff and others, the hearing officer concluded that:

"Antonelli has repeatedly demeaned, yelled at, or insulted, or has been discourteous, impatient, or rude or acted in an undignified and unprofessional manner toward members of the staff in the Register's Office and other offices in the Probate and Family Court, judges, administrators and others. . . . Antonelli has habitually and publicly addressed members of the court staff in an angry, demanding, accusatory, and abusive manner causing these staff members to feel afraid, belittled, embarrassed, humiliated or offended. This conduct has created an environment in the Probate Court offices that is stressful, tense, unproductive, and unprofessional. . . .

"By such a pattern of misconduct, Mr. Antonelli has engaged in conduct prejudicial to the administration of justice or conduct unbecoming a Register of Probate that brings the Office of Register of Probate into disrepute, and conduct which violates Supreme Judicial Court Rule 3:12, Canon 3 (A) (3) and 3 (B)."[2]

This court scheduled the case for argument. Antonelli had, however, discharged his lawyer, and no brief was filed on his behalf in this court. We shall nevertheless consider various chal-

---

[2]The hearing officer summed up his assessment of Antonelli as follows:

"What emerged through the trial testimony was the portrait of a man whose background, training, experience and education did not prepare him to assume the responsibilities of the Register of Probate. Mr. Antonelli continuously used his position for his own purposes and gave little thought to the inappropriateness of his actions. His concerns about employee loyalty and his distrust of employees bordered on the paranoid. Mr. Antonelli maintained a hostile, belittling, and angry attitude toward the courthouse staff, which led to an unproductive and unprofessional atmosphere."

lenges to the hearing officer's findings and to the propriety of the proceedings brought against him that Antonelli made to the committee.

Challenges to the hearing officer's conclusions concerning the credibility of witnesses must fail. Credibility questions are for the trier of fact to resolve. *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 509-510 (1997). As in the case of a master (Mass. R. Civ. P. 53 [h] [1], as amended, 386 Mass. 1237 [1982]), we accept the hearing officer's specific findings of fact unless they are clearly erroneous, unwarranted, or otherwise tainted by error of law. See *O'Brien* v. *Dwight*, 363 Mass. 256, 281 (1973).[3] Conduct supporting the first allegation that occurred before Antonelli took office may properly be considered. See *Massachusetts Bar Ass'n* v. *Cronin*, 351 Mass. 321, 325 (1966). It is not necessary that each fact supporting an allegation be found by clear and convincing evidence but only that the allegation of an ethical violation be proved by clear and convincing evidence. Cf. *Care & Protection of Laura*, 414 Mass. 788, 792 (1993). The hearing officer's findings of fact warranted the recommendation that Antonelli be removed from office. See *Matter of Dugan*, 416 Mass. 461 (1993); *Attorney Gen.* v. *Tufts*, 239 Mass. 458, 490 (1921).

We turn then to Antonelli's objections based on claimed errors of law. The claim is meritless that the testimony of employees should not have been considered because their complaints could have only been properly presented pursuant to the grievance procedures of their collective bargaining agreement. We are concerned not with redressing employee grievances but rather with the public interest and our obligation under G. L. c. 211, § 4, to remove a register of probate "if sufficient cause is shown therefor and it appears that the public good so requires."

The Justices's removal of a register of probate pursuant to G. L. c. 211, § 4, does not violate the separation of powers provisions of art. 30 of the Massachusetts Declaration of Rights.

---

[3]The hearing officer gave tangible examples as to why he tended to disbelieve Antonelli. The committee rightly adopted the hearing officer's comments that, although Antonelli objected to the findings on the ground that his failure to recollect events and understand questions posed to him cannot be the basis for not finding him credible, these failures, taken in the context of his entire testimony, tended to show that he was intentionally avoiding difficult cross-examination questions in favor of reliance on prepared statements.

Our statutory task is closely connected with judicial business and does not involve the exercise of a nonjudicial function. See *Opinion of the Justices*, 336 Mass. 765, 770 (1957); *Opinion of the Justices*, 300 Mass. 596, 598-599 (1938) (registers' "duties are in the main concerned with administering justice, which is in a sense under the general supervision of the Supreme Judicial Court"); *Attorney Gen.* v. *Pelletier*, 240 Mass. 264, 296 (1922).

The court properly created the committee and appointed a hearing officer to consider the allegations against Antonelli. Those actions are inherent in the exercise of our judicial power. See *Gray* v. *Commissioner of Revenue*, 422 Mass. 666, 672 (1996); *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 510 (1972). This court has traditionally appointed masters and special commissioners. See *Matter of Troy*, 364 Mass. 15, 23-24 (1973); *O'Brien* v. *Dwight*, 363 Mass. 256, 280 (1973); Mass. R. Civ. P. 53, as amended, 423 Mass. 1408 (1996). There is no factual basis for Antonelli's claim that the hearing officer was biased or that he was denied due process of law in a public hearing of which he had ample notice, at which he was represented by counsel, and during which he was allowed to cross-examine witnesses and present evidence. See *Matter of Eisenhauer*, 426 Mass. 448, 454 (1998); *Attorney Gen.* v. *Pelletier, supra* at 295.

The term "public good" in G. L. c. 211, § 4, authorizing removal of a register of probate only in a case where "the public good so requires" is not impermissibly vague. See *Caswell* v. *Licensing Comm'n for Brockton*, 387 Mass. 864, 873 (1983); *Custody of a Minor (No. 2)*, 378 Mass. 712, 717 (1979). The canons promulgated pursuant to S.J.C. Rule 3:12, as amended, 427 Mass. 1322 (1998), and interpretations of the statute expand on and clarify the challenged phrase. As applied to the conduct in which Antonelli engaged and for which his removal is recommended, there is no uncertainty concerning the requirements of the public interest.

The Justices of the Supreme Judicial Court acting pursuant to their inherent constitutional authority and pursuant to G. L. c. 211, § 4, hereby remove Robert B. Antonelli as Register of Probate of Middlesex County, effective immediately.