## C.O.[1] *vs.* M.M.

Plymouth. September 8, 2004. - October 6, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Abuse Prevention. Statute,* Construction. *Due Process of Law,* Abuse prevention. *Words,* "Substantive dating relationship."

This court concluded that the existence of a "substantive dating relationship" should be determined on a case-by-case basis applying the factors set forth in G. L. c. 209A, § 1 (*e*) (1)-(4), while keeping in mind the protective purpose of G. L. c. 209A. [650-654]

At a hearing on an abuse prevention order, the judge erred in relying on improper factors as the basis for his finding that the parties were engaged in a "substantive dating relationship" and not those set forth in G. L. c. 209A, § 1 (*e*) (1)-(4). [654-656]

The judge at a hearing on an abuse prevention order improperly denied the defendant the opportunity to present evidence and cross-examine during the hearing on the question of continuing the order, thereby violating the defendant's rights under G. L. c. 209A, § 4, and his constitutional right to due process; moreover, the judge erred in determining that the defendant's right to present evidence at an upcoming criminal hearing would sufficiently protect the defendant's due process rights with regard to the abuse prevention order. [656-659]

COMPLAINT for protection from abuse filed in the Brockton Division of the District Court Department on January 29, 2004.

The case was heard by *Joseph R. Welch,* J., and a motion to modify was heard by *Lance J. Garth,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeffrey S. Beckerman* for the defendant.

*Elizabeth M. Clague* for the plaintiff.

COWIN, J. The defendant appealed from the issuance against him of an abuse prevention order pursuant to G. L. c. 209A, § 4. We transferred the case to this court from the Appeals Court on our own motion. The defendant asks that we vacate

---

[1] In behalf of her minor daughter, K.O.

the G. L. c. 209A abuse prevention order on the bases that (1) the plaintiff failed to meet her burden of establishing the existence of a "substantive dating or engagement relationship" as required by G. L. c. 209A, § 1 (*e*); and (2) the District Court judge violated the defendant's due process rights by not permitting him to call any witnesses on his behalf or otherwise to challenge the evidence presented by the plaintiff during the hearing on the question of continuing the temporary order. After reviewing the parties' briefs and hearing oral argument, this court issued an order vacating the abuse prevention order. This opinion addresses the reasons for that order.[2]

*Background.* We summarize the relevant and undisputed facts of this case as set forth in the parties' briefs and pleadings. The defendant, M.M., is a seventeen year old high school student accused of having sexually assaulted a fifteen year old schoolmate. The plaintiff in this case, C.O., is the mother of the young woman who was allegedly abused ("daughter"). Shortly after the alleged incident, the plaintiff filed a complaint and supporting affidavit on behalf of her daughter and obtained an ex parte abuse prevention order against the defendant pursuant to G. L. c. 209A, § 4. The plaintiff's affidavit alleges that the defendant offered to drive the daughter home from school and, along the way, stopped at his house, invited the young woman inside, and then forcibly sexually assaulted her in his bedroom. The defendant contests the occurrence of the incident.

One day after an ex parte emergency temporary abuse prevention order was issued, see G. L. c. 209A, § 4, the defendant was arrested on charges arising from the alleged assault. The defendant was arraigned on these charges and subsequently released on bail. He was suspended from high school as a result of the arrest.

After a hearing during which both parties were represented

---

[2]The plaintiff also filed a motion to strike portions of the defendant's brief for failure to comply with Mass. R. A. P. 16 (e), as amended, 378 Mass. 940 (1979). We deny the plaintiff's motion. Our holding does not rest on any contested language in the brief, and we see nothing in the brief that is confidential or otherwise prejudicial to the plaintiff. See *Commonwealth* v. *Nadal-Ginard*, 42 Mass. App. Ct. 1, 13 (1997) (motion to strike portions of appellate brief denied where passages in question neither confused panel of Appeals Court nor prejudiced panel against defendant).

by counsel, a judge of the Brockton District Court extended the abuse prevention order for a period of one year. Defendant timely appealed the issuance of the order and shortly thereafter filed a motion to suspend the order pending appeal. The judge denied the defendant's motion to suspend the abuse prevention order pending appeal, and the defendant timely appealed the denial of that motion as well. Subsequently, the district attorney's office entered a nolle prosequi on all pending charges related to the alleged sexual assault, and the defendant immediately filed a motion to modify the abuse prevention order and requested an evidentiary hearing on his earlier motion to vacate. A different District Court judge denied the defendant's motion to modify, and the defendant once again timely appealed.

*Discussion.* We first consider whether the plaintiff's daughter and the defendant were engaged in a "substantive dating relationship" as defined in G. L. c. 209A, § 1. We then discuss whether the defendant's due process rights were violated during the hearing on the question of continuing the temporary order.

1. *Substantive dating relationship.* General Laws c. 209A, § 3, provides a range of protections and remedies for those "person[s] suffering from abuse from an adult or minor family or household member . . . ." Included within the definition of "family or household members" are those individuals who are or have been engaged in a "substantive dating or engagement relationship." G. L. c. 209A, § 1 (*e*).[3]

The defendant maintains that the plaintiff failed to show the existence of a "substantive dating relationship" between him and the plaintiff's daughter, and that, consequently, the abuse prevention order against him was improperly issued and extended. The defendant further asks this court to clarify the meaning of "substantive dating relationship" in G. L. c. 209A, § 1. Because the statute enumerates four factors to be considered in determining the existence of a "substantive dating relationship," there is sufficient language in the statute to enable judges to make informed and consistent determinations.

[3]The plaintiff does not assert the existence of an "engagement relationship," and there is no evidence in the record to suggest such a relationship ever existed between the parties. We therefore confine our analysis to whether there was a "substantive dating relationship."

We need not add to this language by interpretation. We believe that the Legislature drafted the statute with purposeful flexibility in its definitions, and we acknowledge that intent by declining the invitation to add elements to the Legislature's definition. The existence of a "substantive dating relationship" is to be determined on a case-by-case basis applying the factors set forth in G. L. c. 209A, § 1 (*e*) (1)-(4), while keeping in mind the statute's protective purpose.

The Legislature enacted G. L. c. 209A in 1978 to address the problem of domestic violence. St. 1978, c. 447, § 2. See *Turner* v. *Lewis*, 434 Mass. 331, 332 (2001), quoting *Commonwealth* v. *Gordon*, 407 Mass. 340, 344 (1990) (legislative purpose of G. L. c. 209A is to provide "a statutory mechanism by which victims of family or household abuse can enlist the aid of the State to prevent further abuse"). Since its inception, G. L. c. 209A has protected victims exclusively from abuse by "family or household members." G. L. c. 209A, § 3. However, the Legislature has consistently broadened the definition of "family or household member," and consequently expanded the scope of G. L. c. 209A's coverage. In 1978, the statute defined "[f]amily or household member" as a "household member, a spouse, former spouse or their minor children or blood relative." St. 1978, c. 447, § 2. In 1986, the definition of "family or household member" was expanded to include a "former household member" and a "person who, though unrelated by blood or marriage, is a parent of the plaintiff's minor child." St. 1986, c. 310, § 15. In 1990, the Legislature once again amended the definition of "family or household member" to its present form.[4] St. 1990, c. 403, § 2. General Laws c. 209A, § 1, now defines "[f]amily or household members" as "persons who: (a) are or were married to one another; (b) are or were residing together in the same household; (c) are or were related by blood or marriage; (d) having [*sic*] a child in common regardless of whether they have ever married or lived together; or (e) *are or have been in a substantive dating or engagement relationship* . . ." (emphasis added).

Rather than establishing a rigid test to be applied to all

---

[4]In 1996, the Legislature made a grammatical correction to the definition that is immaterial to our analysis. St. 1996, c. 450, § 232.

relationships, the statute directs courts to "adjudge[]" the exist-
ence of substantive dating relationships by considering four fac-
tors: "(1) the length of time of the relationship; (2) the type of
relationship; (3) the frequency of interaction between the par-
ties; and (4) if the relationship has been terminated by either
person, the length of time elapsed since the termination of the
relationship." G. L. c. 209A, § 1 (*e*) (1)-(4). The Legislature
thus anticipated that the existence or absence of a "substantive
dating relationship" would be determined on a case-by-case
basis. It is not our role to impose additional constraints on the
interpretive instructions provided by the Legislature. See *Com-
monwealth* v. *Boucher*, 438 Mass. 274, 278 (2002) (declining to
further limit phrase "likely" in G. L. c. 123A, and reasoning
"[i]f the Legislature had intended to restrict 'likely' to a usage
less broad than its commonly understood meaning, the
Legislature would have done so"). See also *Sorgman* v. *Sorg-
man*, 49 Mass. App. Ct. 416, 418 (2000) (declining to imply
limiting factors to plain statutory language of G. L. c. 209A).
Had the Legislature intended to further limit the scope of
"substantive dating or engagement relationship," it would have
included any such limitation in the text of the statute.

This court has had only one prior opportunity to consider the
meaning of "substantive dating relationship" within G. L.
c. 209A, § 1 (*e*). See *Brossard* v. *West Roxbury Div. of the Dist.
Court Dep't*, 417 Mass. 183, 185 (1994) (person may be in
more than one "substantive dating relationship" at any given
time). In acknowledging the possibility of simultaneous
"substantive dating relationships," we recognized the need for
flexibility in applying the statute. Also instructive is our analysis
in *Turner* v. *Lewis*, *supra* at 333-334, in which we broadly
interpreted "related by blood," as set forth in G. L. c. 209A,
§ 1 (*c*). In *Turner*, we recognized the changing nature of the
concept of "family," as well as the Legislature's clear intent to
extend protections to victims who experience violence beyond
the context of the traditional "family." See *id.* at 334-336. The
Legislature intended to encompass a variety of relationships
within G. L. c. 209A. It would not accord with this intent to
restrict the statute beyond its terms in the present case.

While the four statutory factors enumerated in G. L. c. 209A,

§ 1 (*e*) (1)-(4), are the primary guidance for courts when making case-specific determinations about the existence of a "substantive dating relationship," courts should also consider the underlying purpose of G. L. c. 209A. See *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934) (statutory language is to be "interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished"). See also *Turner* v. *Lewis*, *supra* at 333, quoting *Telesetsky* v. *Wight*, 395 Mass. 868, 872 (1985). The Legislature intended to address violence stemming from relationships which may not be considered traditional "family or household" associations. See *Turner* v. *Lewis*, *supra* at 334, quoting C.P. Kindregan, Jr. & M.L. Inker, Family Law and Practice § 57.5 (2d ed. 1996). The judicial guidelines on abuse prevention thus properly instruct courts to "give broad meaning to the term 'substantive dating relationship' to assure that the protective purposes of the statute are achieved." Guidelines for Judicial Practice: Abuse Prevention Proceedings § 3:02 commentary (Dec. 2000) (hereinafter, "Judicial Guidelines").

On the other hand, G. L. c. 209A is denominated a "domestic relations" statute within the General Laws. See Part II, Title III of the General Laws, entitled "Domestic Relations" (including, inter alia, marriage, divorce, and child custody statutes). The Legislature did not intend the statute to apply to acquaintance or stranger violence, nor did it intend to cover the myriad of relationships that exist or even to all those which might be considered "dating" relationships. See *Brossard* v. *West Roxbury Div. of the Dist. Court Dep't*, *supra* at 185 ("substantive dating relationship" existed where facts revealed "substantially more than a few casual dates"). The statutory language clearly requires something more — a "*substantive* dating or engagement relationship."

Dating is inherently personal and idiosyncratic, and relationships exist in endless variety. It would be unproductive to place a numerical quota on the number of "dates" that constitute a "substantive dating relationship," just as it would be inap-

propriate to mandate a minimum duration for a relationship to fall within G. L. c. 209A. Furthermore, any attempt by this court to elaborate on the meaning of "substantive dating relationship" by adding adjectives to an already well-designed statutory definition would be counterproductive. Such an effort might spawn additional litigation and result in unnecessary intrusions by courts into the precise nature of parties' interactions. See Judicial Guidelines § 1:01 commentary ("any attempt to explore the nature of the underlying relationship between the parties can inappropriately shift the focus of the proceedings away from the issue of protection. Such a shift of focus can weaken the plaintiff's resolve to seek protection . . .").

The plaintiff bears the burden of proving by a preponderance of the evidence that the parties were engaged in a "substantive dating relationship" within the meaning of G. L. c. 209A, § 1. See *Frizado* v. *Frizado*, 420 Mass. 592, 596, 597 (1995) ("The burden is on the complainant to establish facts justifying the issuance and continuance of an abuse prevention order," and "plaintiff must make a case for relief by a preponderance of the evidence.") See also Judicial Guidelines § 1:02 commentary par. (D). Here, the plaintiff failed to sustain her burden. During the hearing on the question of continuing the temporary order, the plaintiff testified that the defendant had "been over to the house and he ha[d] taken [the daughter] to the movies." When asked about the nature of the relationship, the mother testified that she was "really not sure. They did, you know, go out." Plaintiff's counsel asserts that the plaintiff's uncertainty related only to the then-existing state of the dating relationship, not its past existence. Even so, the judge's finding of a past "boyfriend/ girlfriend" relationship is not supported by the plaintiff's testimony, and the relationship between the parties does not meet the statutory standard of a "substantive dating relationship." The plaintiff's counsel also contends that the judge properly made a credibility assessment of the plaintiff, who was the sole witness at the hearing, that this court should not disturb. See *Adoption of Larry*, 434 Mass. 456, 462 (2001) (deferring to judge's assessment of witness credibility). See also *Matter of Antonelli*, 429 Mass. 644, 648 (1999). We do not

contest the judge's assessment of the plaintiff's credibility in the present case, but rather his misapplication of the standards set forth in G. L. c. 209A, § 1. See *Commonwealth* v. *Boucher,* 438 Mass. 274, 276 (2002) ("we will not substitute our judgment for that of the trier of fact. We do, however, scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts").

The judge committed an error of law in relying on improper factors as the basis for his finding that the parties were engaged in a "substantive dating relationship." General Laws c. 209A, § 1 (*e*) (1)-(4), directs judges to consider four factors. The judge in this case ignored these factors and instead improperly relied upon judicially constructed factors, including "the fact that a criminal matter [*sic*] has issued," and "the age of the alleged victim." According to the judge, the determination was based "primarily" on the fact that a criminal case was pending. There was no testimony as to the length of time of the relationship or the frequency of the parties' interactions, as required by G. L. c. 209A, § 1 (*e*) (1), (3). The plaintiff contends that the judge properly exercised his broad discretion in according weight to these nonstatutory factors. While judicial discretion and flexibility are appropriate in applying the statutory definition of "substantive dating relationship," they do not relieve a court of its obligation to apply the legislative criteria.

Although the plaintiff asserts that the judge could draw an adverse inference from the defendant's failure to testify, this alone does not cure the defects in the judge's analysis. "An inference adverse to a defendant may be properly drawn . . . from his or her failure to testify in a civil matter such as this, even if criminal proceedings are pending . . . . However, inference cannot alone meet the plaintiff's burden. . . . [A] defendant's failure to testify cannot be used to justify the issuance of an abuse prevention order until a case is presented on other evidence." (Citations omitted.) *Frizado* v. *Frizado, supra* at 596.

Since there is insufficient evidence in the record to support a finding of a "substantive dating relationship" between the defendant and the plaintiff's daughter, the abuse prevention

order is vacated, and this case could be disposed of without further discussion. However, given the importance and merit of the defendant's due process claim, which both parties briefed, we choose to address it below.

2. *Due process claim.* The defendant on appeal claims that he was improperly denied the opportunity to present evidence and cross-examine during the hearing on the question of continuing the temporary order. There is no question that the defendant was denied a meaningful opportunity to be heard. This violated statutory rights given him expressly by G. L. c. 209A, § 4; apart from the statute, his constitutional right to due process was denied him.

General Laws c. 209A, § 4, requires a hearing "on the question of continuing the temporary order . . . no later than ten court business days after such [temporary] orders are entered." The statute explicitly states: "[t]he court shall give the defendant an opportunity to be heard on the question of continuing the temporary order." *Id.* This court has determined that "[t]he right of the defendant to be heard [in a G. L. c. 209A proceeding] includes his right to testify and to present evidence. A defendant has a general right to cross-examine witnesses against him." *Frizado* v. *Frizado*, 420 Mass. 592, 597 (1995). See Judicial Guidelines § 5:01 ("a [G. L.] c. 209A action is an adversarial proceeding in which both parties must be allowed to present evidence"). Furthermore, this court has recognized that G. L. c. 209A proceedings may implicate a defendant's constitutional due process rights. *Frizado* v. *Frizado*, *supra* at 598 ("[W]hether a defendant's constitutional rights have been violated will depend on the fairness of a particular hearing"). Due process requires that the defendant be given an opportunity to testify and present evidence. See *Commonwealth* v. *Delaney*, 425 Mass. 587, 591 (1997), cert. denied, 522 U.S. 1058 (1998), quoting *Matter of Kenney*, 399 Mass. 431, 435 (1987) ("[t]he fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner"); *Commonwealth* v. *Durling*, 407 Mass. 108, 113 (1990) (right to present evidence, call witnesses, and cross-examine adverse witnesses in context of parole revocation hearing); *Roche* v. *Massachusetts Bay Transp. Auth.*, 400 Mass. 217, 222 (1987),

and cases cited ("right of cross-examination [is] a right which has long been recognized in both civil and criminal cases"); Judicial Guidelines § 1:02 ("The adjudication of cases by a neutral court is a fundamental element of due process. In [G. L.] c. 209A cases, as in all other court proceedings, the court is responsible for protecting the rights of the accused . . .").

The record reveals that the defendant was not given any opportunity to present or to cross-examine witnesses. The defendant's counsel explicitly argued for the right to call witnesses on at least four occasions. The defendant was never permitted to present evidence.[5] The fact that defense counsel was permitted to argue on behalf of his client does not substitute for the opportunity to present evidence through the testimony of witnesses, to cross-examine adverse witnesses, and to have the judge take this testimony and cross-examination into account in making his findings.

The plaintiff next claims that even if the defendant were denied the opportunity to call and cross-examine witnesses, those denials constituted a proper exercise of judicial discretion. While a defendant's right to present evidence is not absolute, and while a judge may limit cross-examination for "good cause" in certain situations, see *Silvia* v. *Duarte*, 421 Mass. 1007, 1008 (1995); *Frizado* v. *Frizado*, *supra* at 597-598, judicial discretion is not "unlimited," and "each side must be given a meaningful opportunity to challenge each other's evidence." *Frizado* v. *Frizado*, *supra* at 598 n.5. Proceedings held pursuant to G. L. c. 209A are no different than any other adversarial hearings in that each party has a right to present evidence, and the moving party must satisfy the burden of proof and subject its witnesses to cross-examination. See *Frizado* v. *Frizado*, *supra* at 597 ("The practice in civil actions . . . is to permit cross-examination . . .); *Commonwealth* v. *Durling*, *supra* at 113 (right to present evidence, call witnesses, and

---

[5]During one such request, defense counsel stated: "I would like an opportunity to exercise my client's rights to cross-examine [the plaintiff] . . . and I would like to present additional evidence in terms of witnesses which I believe according to the rules is my right and my client's right to . . . due process." The defendant's counsel further stated that his witnesses would show that the daughter and the defendant were not engaged in a "substantive dating relationship" and that the alleged assault did not occur.

cross-examine adverse witnesses). Cross-examination may be limited or denied in certain instances, *Frizado* v. *Frizado, supra* at 598 n.5, such as to avoid harassment or intimidation of witnesses, confusion, delay, or other abuses of the proceedings. See, e.g., *Commonwealth* v. *Johnson,* 431 Mass. 535, 540 (in criminal context, "reasonable limits may be placed on cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant' " [citation omitted]); Judicial Guidelines § 5:01 ("the judge should not permit . . . cross-examination to be used for harassment or discovery purposes"). Absent these circumstances, a defendant in a G. L. c. 209A proceeding, as in any case, must be given the opportunity to present evidence and cross-examine witnesses. Here, there was no showing by the plaintiff of any of the grounds enumerated above that would justify a limitation on these rights.[6] In fact, the issue whether to limit cross-examination was never reached by the judge because he allowed no cross-examination at all. The judge abused his discretion in denying the defendant the opportunity to present testimonial evidence and cross-examine the plaintiff.

One final error of law by the judge in this case requires discussion. The judge improperly determined that the defendant's right to present evidence at an upcoming criminal hearing would sufficiently protect the defendant's due process rights. The judge stated, "if we have a [G. L. c. 209A protective order] . . . and there is no pending criminal matters pending [*sic*], then that's a much different issue. In other words, we give both parties a full right to have a hearing and witnesses . . . . But if there's a criminal matter pending, then that's a different matter altogether." A defendant's right to present evidence at a G. L. c. 209A hearing is unrelated to his rights at a pending criminal proceeding. The right to be heard in one forum does not affect the right to be heard in another.

Although "[a]buse prevention order proceedings were intended by the Legislature to be as expeditious and informal as

---

[6]The plaintiff made bald assertions that the defendant intended to harass witnesses and create confusion in the proceedings, but these claims are unsupported by the record.

reasonably possible," *Zullo* v. *Goguen*, 423 Mass. 679, 681 (1996), citing *Frizado* v. *Frizado, supra* at 598, the proceedings may not violate the due process rights of defendants in an attempt to accommodate plaintiffs. "[T]he issue of family violence has become the focus of legitimate and increasing public concern. However, that concern must not be permitted to affect or diminish the court's responsibility to remain neutral, to protect the rights of the accused in each case, and to address each case individually on its own merits." Judicial Guidelines § 1:02 commentary. Just as we must guard against the potential that G. L. c. 209A proceedings may be used to harass and intimidate victims of domestic abuse, so too must we resist a culture of summarily issuing and extending these orders. Such a culture would ignore the legislative intent behind G. L. c. 209A and undermine a basic pillar of our judicial tradition — that all parties be given a fair and equal opportunity to be heard.

For the foregoing reasons, the abuse prevention order against the defendant is vacated.