NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1182                                            Appeals Court

IN THE MATTER OF A.M.


No. 16-P-1182.

Suffolk.     October 6, 2017. - November 2, 2018.

Present:  Wolohojian, Maldonado, & Wendlandt, JJ.


Practice, Civil, Civil commitment.  Words, "Likelihood of
     serious harm."



     Petition for commitment for alcohol or substance use
disorder filed in the Chelsea Division of the District Court
Department on June 1, 2016.

     The case was heard by Michael A. Patten, J.


     Jessica C. Gallagher, Committee for Public Counsel
Services, for the respondent.


     MALDONADO, J.  Fearful that her adult son, the respondent

A.M., faced grave harm due to his drug addiction, A.M.'s mother

filed a petition in the District Court requesting that the court

order his involuntary commitment to a treatment facility,

pursuant to G. L. c. 123, § 35 (§ 35).  On June 6, 2016, after

an evidentiary hearing that included expert testimony, a judge

issued a commitment order based on a finding that A.M. suffered from a substance use disorder that was likely to cause serious harm.  A.M. appealed to the Appellate Division of the District Court, which affirmed the § 35 commitment order.[1]  Concluding that the evidence does not support a finding of imminent risk of serious harm, we reverse the decision and order of the Appellate Division.  A new order shall enter vacating the § 35 commitment order.[2]

1.  Statutory framework and standard of proof.  Section 35 authorizes a "blood relative," among others,[3] to file a written petition requesting the involuntary "commitment of a person whom [the petitioner] has reason to believe" has a "substance use disorder."  G. L. c. 123, § 35, second par.  If, after due

---

[1] For rules implementing § 35, see Uniform Trial Court Rules for Civil Commitment Proceedings for Alcohol and Substance Abuse Disorders (2016).

[2] Because A.M. is no longer committed, his challenge to the commitment order is technically moot.  Matter of G.P., 473 Mass. 112, 113 (2015).  "Nevertheless, we decide the case because it raises important issues concerning" appellate review of § 35 commitments, "and these issues are likely to evade review on account of the relatively short duration of the involuntary commitment under § 35."  Id.  Cf. Matter of F.C., 479 Mass. 1029, 1029-1030 (2018), quoting Seney v. Morhy, 467 Mass. 58, 62 (2014) ("a person who has been wrongfully committed or treated involuntarily has 'a surviving interest in establishing that the orders were not lawfully issued, thereby, to a limited extent, removing a stigma from his name and record'").

[3] "Any police officer, physician, spouse, blood relative, guardian or court official" may file a § 35 petition for a civil commitment order.  G. L. c. 123, § 35, second par.

notice to the respondent and an evidentiary hearing with expert testimony, a judge finds that the respondent "is an individual with [a] . . . substance use disorder and there is a likelihood of serious harm as a result of the [respondent's] . . . substance use disorder," the judge may order the individual involuntarily committed for up to, but not more than, ninety days, to a facility licensed or otherwise approved by the Department of Public Health.  G. L. c. 123, § 35, third par.

To protect the fundamental liberty interests of an individual in a civil commitment proceeding, see Addington v. Texas, 441 U.S. 418, 425-426 (1979), a judge's order of involuntary commitment under § 35 must be based on clear and convincing evidence.  Matter of G.P., 473 Mass. 112, 120 (2015). See Mass. G. Evid. § 1118 (a) (2018).  "Clear and convincing evidence involves a degree of belief greater than the usually imposed burden of proof by a fair preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases."  Callahan v. Westinghouse Broadcasting Co., 372 Mass. 582, 584 (1977).  This heightened evidentiary standard not only demonstrates the importance of the decision ordering the involuntary commitment, but it also safeguards against the chance of inappropriate commitments.[4]  It

---

[4] "The function of a standard of proof, as that concept is embodied in the Due Process Clause [of the Fourteenth Amendment

is necessary to ensure that a respondent's "potential for doing harm, to himself or to others, is great enough to justify such a massive curtailment of liberty." Commonwealth v. Nassar, 380 Mass. 908, 917 (1980), quoting Lessard v. Schmidt, 349 F. Supp. 1078, 1093 (E.D. Wis. 1972), vacated and remanded on other grounds, 414 U.S. 473 (1974).

2. Standard of review. In this case, A.M. does not challenge the judge's subsidiary findings. Rather, he challenges the sufficiency of the evidence in support of the judge's conclusion that A.M. suffered from a substance use disorder that resulted in the "likelihood of serious harm." G. L. c. 123, § 35, third par.

It is within the purview of the judge to weigh evidence, assess the credibility of witnesses, and make findings of fact, which we must accept unless clearly erroneous.[5] See G.E.B. v.

---

to the United States Constitution] and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he [or she] should have in the correctness of factual conclusions for a particular type of adjudication." Addington, 441 U.S. at 423, quoting In re Winship, 397 U.S. 358, 370 (1970) (Harlan, J., concurring).

[5] A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Marlow v. New Bedford, 369 Mass. 501, 508 (1976), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). See Haskell v. Versyss Liquidating Trust, 75 Mass. App. Ct. 120, 125 (2009). The hearing judge's explicit (or implicit) assessment of the evidence is entitled to considerable deference because "it is

S.R.W., 422 Mass. 158, 172 (1996), and cases collected. However, we generally "scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts." Iamele v. Asselin, 444 Mass. 734, 741 (2005), quoting C.O. v. M.M., 442 Mass. 648, 655 (2004).  This standard of review has been previously applied in the context of § 35 commitments.  See Matter of G.P., 473 Mass. at 129-130.  See also Greenberg v. Commonwealth, 442 Mass. 1024, 1024 (2004) ("expert's affidavit supporting the commitment petition was wholly insufficient"). Accordingly, it is the standard we employ in our review here of the judge's order under § 35.

3.  Likelihood of serious harm.  In the context of § 35, the "likelihood of serious harm" means, among other definitions not applicable here, "a very substantial risk of physical impairment or injury to the [respondent] himself as manifested by evidence that [the respondent's] judgment is so affected that he is unable to protect himself in the community and that

---

the trial judge who, by virtue of his [or her] firsthand view of the presentation of evidence, is in the best position to judge the weight" and materiality of the evidence and credibility of the witnesses at trial.  New England Canteen Serv., Inc. v. Ashley, 372 Mass. 671, 675 (1977).

reasonable provision for his protection is not available in the community."[6]  G. L. c. 123, § 1.

Both the court clinician and A.M.'s mother testified to A.M.'s long-standing battle with an addiction to crystal methamphetamine.  However, chronic substance abuse, "by itself, is insufficient to establish a 'very substantial risk' of harm." Matter of G.P., 473 Mass. at 128.

Instead, there must be an element of imminent risk of serious harm.  Id. at 127.  The evidence must support a conclusion that the imminent harm will materialize "in the reasonably short term -- in days or weeks rather than in months."  Id. at 128.  "We may accept . . . that in the degree that the anticipated physical harm is serious -- approaches death -- some lessening of a requirement of 'imminence' seems justified."  Id., quoting Nassar, 380 Mass. at 917.

Here, A.M.'s mother reported rescuing A.M., while he was living on his own in New York, from unhealthy and unsanitary conditions that resulted from his substance use disorder.  She also reported that A.M.'s drug use induced lethargy,

---

[6] "Likelihood of serious harm" is also defined as "(1) a substantial risk of physical harm to the person himself as manifested by evidence of, threats of, or attempts at, suicide or serious bodily harm; [or] (2) a substantial risk of physical harm to other persons as manifested by evidence of homicidal or other violent behavior or evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them . . . ."  G. L. c. 123, § 1.

hyperactivity, and hallucinations.  On the question of the likelihood of serious harm, the court clinician opined only that

> "[A.M. has a] very serious medical condition and his mother's report that when he's using, which has been -- she's reporting almost daily -- that he's not taking care of himself. . . . [and] although he's taking the medication for the serious medical condition, that that combination can be potentially life-threatening as well . . . ."

However, neither A.M.'s failure to take his prescribed medication consistently nor the possibility that his illicit drug use in combination with an unspecified prescribed medication regimen that has mere potential to be life threatening rises to "imminent serious harm."  Accordingly, the evidence before the judge did not justify A.M.'s involuntary commitment under § 35.  See Matter of G.P., 473 Mass. at 129.[7]

4.  Conclusion.  We sympathize with a mother's concern over her child's substance use disorder, and we recognize that risk factors in cases under § 35 are fluid and can change over time. These cases are not amenable to bright lines.  Cf. Commonwealth v. Boucher, 438 Mass. 274, 276 (2002) (assessing risk of reoffending under G. L. c. 123A is determined "case-by-case"). Nevertheless, we cannot conclude that the evidence here justified A.M.'s involuntary commitment under the statute.

---

[7] The judge appears to have also found that A.M.'s substance use disorder could present a likelihood of serious harm to others.  We discern no evidence in the record that supports this alternative basis for commitment.

Accordingly, we reverse the decision and order of the Appellate Division, and a new order shall enter vacating the order of involuntary commitment pursuant to G. L. c. 123, § 35.

So ordered.

MS