NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-431

B.M.

vs.

N.S.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Less than three weeks after the defendant-appellant N.S. obtained an abuse prevention order under G. L. c. 209A, § 3 (209A order), from the Boston Municipal Court against plaintiff-appellee B.M., B.M. initiated this litigation, obtaining his own 209A order against N.S. in the Probate and Family Court. Following a two-party hearing on January 2, 2025, a judge of the Probate and Family Court extended the ex parte order against N.S. until the day on which N.S.'s 209A order against B.M. was due to expire, about eleven months later. On appeal, N.S. argues that the judge committed several legal errors and abused her discretion in issuing the order.

We conclude the order must be vacated for at least three reasons.

1. First, the statute has specific requirements that must be met before issuance of a mutual 209A order, that is, a reciprocal order between the parties, whether issued by one court or different courts. See Sommi v. Ayer, 51 Mass. App. Ct. 207, 210 (2001). Specifically, a mutual order such as this may issue "only if the court has made specific written findings of fact." G. L. c. 209A, § 3. Written findings in mutual restraining order cases should include "case-specific findings regarding key disputed issues, typically including what 'abuse' (as defined in G. L. c. 209A, § 1) the defendant has committed, and why an order to prevent further abuse by that defendant is warranted." Nelson N. v. Patsy P., 98 Mass. App. Ct. 78, 81-82 (2020). The judge made no findings of fact at all, let alone written ones. This alone requires the order be vacated. Id.

2. Second, the judge failed to consider evidence necessary to issue a mutual 209A order.

As we have previously explained, "the purpose of specific written findings is to ensure that the judge will carefully consider the evidence presented to determine who is the real victim and aggressor in an abusive relationship and if a mutual order is warranted." Sommi, 51 Mass. App. Ct. at 211. The

2

judge took no evidence on these questions and thus could not have considered them. As described below, the judge did hear some evidence from the plaintiff, B.M., in support of the extension of the order, but heard no evidence concerning what actions by the plaintiff led the Boston Municipal Court to issue the 209A order that the defendant, N.S., previously obtained against B.M. Nor did the judge consider whether this case presents "the rare circumstance when both parties are suffering from abuse," to the extent a mutual 209A order is warranted. Guidelines for Judicial Practice: Abuse Prevention Proceedings § 6:07 (Oct. 2021).

This appears to be at least in part because the judge cut off N.S. when she began the only portion of testimony that might have led to such a discussion. N.S. said, "I fear -- I don't want him near my son. He's a active gang member. He got gun charges and he got drug charges. . . . And I got e-mails of him saying that the people he's -- he got beef with, know where I live." The judge interrupted her and said "today is a restraining order hearing between he and you. Today is not of a hearing about the child. I'm going to note that on the restraining order that she has against you . . . , the child's on it."

3.  Finally, the record contains insufficient evidence to support issuance even of a nonmutual 209A order.  The judge did not describe which of the four possible bases for a 209A order she relied on in issuing the order in the instant case.[1]  However, it is safe to infer, based on the affidavit and evidence presented by B.M., that the basis was a conclusion that B.M. was in reasonable fear of imminent serious physical harm.

B.M.'s affidavit alleged that

"The issue started two years ago when [N.S.] claimed I had a child with her.  I tried to settle it with her outside of court numerous times but it all leads to the same thing, she has threatened me numerous times through text, phone, and social media.  She has an active abuse order against [me] which I follow but she continues to taunt me online with her friends, continues to text me off fake numbers telling me she is going to send people to hurt me.  She has not only been harassing me but also harassing my now ex girlfriend, her ways have been scaring me and I'm currently scared wherever I go."

At the hearing, after the judge initiated a discussion of an ongoing paternity case involving the two parties -- something that took up most of the twenty-page transcript -- the judge read B.M.'s averments aloud and asked, "Do you have any of

_____

[1] Under G. L. c. 209A, § 3, a court may issue an abuse prevention order if a person is suffering from "abuse from an adult or minor family or household member."  General Laws c. 209A, § 1, defines "abuse" as "the occurrence of any of the following acts between family or household members:  (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; (c) causing another to engage involuntarily in sexual relations by force, threat or duress; (d) coercive control."

4

those? . . . Pull up the texts.  I want to see them.  Are they printed?"  B.M. said they were printed, and the judge said she wanted to see them.  B.M. said, "I also have a few on my phone," and the judge said, "You can pull them up.  I want to see them."  The defendant interjected, "That's not my phone number," but the judge did not inquire about that.

The judge said that she saw a picture of N.S.  B.M. described at least one text as "[a]fter the restraining order."  He then said, "this is her fake texting me trying to be a detective, notifying me that I have court."  Then he said, "This is her with the son that she says I have, . . . after the court date, laughing about the restraining order that got approved.  This was her after the court date on Facebook."  The judge said, "Let me read this."  The transcript reflects that the judge was "[Reviewing documents]."  B.M. said that there were "[p]rivate calls," and N.S. was "texting me at five something in the morning, December 14.  This is after the hearing."

The judge asked, "Where's the ones of the threats?"  In the transcript, B.M. says, "This is one right here.  And, then, there's a few of them in here as well."  He then stated, in response to the judge's question whether something was a text to somebody else, "She's sending me a post that she's going to post, and this is my username online.  And, she's basically

5

showing me that she's going to post that."  The judge again responded, "Let me read this."  The transcript reflects her again "[Reviewing documents]."  B.M. said, "And, then, this is her texting me saying that she's going to threaten me."

B.M. then apparently played a video recording in Spanish. B.M. described it as "threatening."  B.M. said, "[t]his was after the restraining order."  The judge asked whether the recording was in Spanish and asked B.M. what N.S. was saying -- without calling in an interpreter.  B.M. said, "I guess that day she was threatening to fight [my ex-girlfriend].  So she went on [Facebook] Live to talk about her.  My ex-girlfriend, me and her, we spoke about the situation.  She's actually, like moved -- moved on from it.  So it's actually like a harassment thing between her."  B.M. also added, "she just keeps antagonizing me and threatening me still, and calling my phone private, and just calling me all types of hours. . . .  So, in my opinion, I just feel like I fear for my safety. . . .  I'm tired of being threatened."

On the order extension form, the judge wrote that the order was being extended "after viewing texts [sic] messages + posts (made after extension of [N.S.]'s 209A against [B.M.])."[2]

---

[2] We note that for a successful plaintiff in a restraining order case, like N.S., contacting the subject of a restraining order that prevents him from contacting her, like B.M., is not

6

However, the judge failed to read any of the printed or digital evidence into the record, to admit it, or to make it part of the record in any other way.  See Mass. G. Evid. § 1119(c) (2025), (explaining that judge should always "make reasonable efforts to ensure that digital evidence, whether admitted or excluded, is preserved in the case record and for appellate review").  Although 209A proceedings "were intended by the Legislature to be as expeditious and informal as reasonably possible" (citation omitted), C.O. v. M.M., 442 Mass. 648, 658-659 (2004), court decisions must be based on record evidence, and there must be sufficient evidence in the record to allow appellate review.  As a consequence of the judge's failures, the record contains no evidence of any threat, let alone a threat of imminent serious physical harm.  There is thus insufficient information in the record to support the judge's conclusion that B.M. had suffered abuse warranting issuance of a 209A order.

For these reasons, the abuse prevention extension order dated January 2, 2025, is vacated, and the case is remanded to the trial court for further proceedings consistent with this decision including entry of a written order notifying the appropriate law enforcement agency or agencies that the order

standing alone a basis for issuing a restraining order under the statute.

7

has been vacated and directing them to destroy all record of the order.

So ordered.

By the Court (Rubin, Grant &
  Hodgens, JJ.[3]),

Clerk

Entered: May 29, 2026.

---

[3] The panelists are listed in order of seniority.