PATRICIA SILVA, guardian,[1] *vs.* NANCY CARMEL.

Middlesex. February 6, 2014. - April 18, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Abuse Prevention. Intellectually Disabled Person. Department of Developmental Services. Words,* "Household members."

At a proceeding to extend a temporary abuse prevention order, arising from injuries that the victim, who is an intellectually disabled adult receiving services from the Department of Developmental Services (department) in a residential program operated by a third party, suffered when the defendant (who also is an intellectually disabled adult receiving services from the department in the same residential program) pushed her into a bathroom, the judge erred in extending the initial abuse prevention order for one year, where residents in a State-governed facility do not reside together in the same household for purposes of G. L. c. 209A. [20-24]

This court declined to order expungement of the defendant's record in a proceeding for extension of an abuse prevention order, where the order was not obtained through any fraud on the court. [24-25]

COMPLAINT for protection from abuse filed in the Newton Division of the District Court Department on May 23, 2012.

A hearing to extend an abuse prevention order was had before *Dyanne J. Klein*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Frederick M. Misilo, Jr. (Marisa W. Higgins* with him) for the defendant.

*Erin Jordan Harris* for the plaintiff.

The following submitted briefs for amici curiae:

*Joseph N. Schneiderman,* of Connecticut, & *Tara Hopper Zeltner* for Association of Developmental Disabilities Providers & another.

*Donna Morelli, Christina L. Paradiso, Edward M. Ginsburg, & Nathan Morse* for Community Legal Aid.

---

[1] Of Christina M. Silva.

IRELAND, C.J. The defendant appeals from an abuse prevention order issued against her pursuant to G. L. c. 209A by a District Court judge based on events that occurred in a residential program under the auspices of the Department of Developmental Services. Because we conclude that individuals who share a common diagnosis or status, rather than marriage, blood, or other relationships that are enumerated in G. L. c. 209A, § 1, and who live together in a State-licensed residential facility, do not qualify as "household members" within the meaning of G. L. c. 209A, § 1, we vacate the order against the defendant.

*Facts and procedure.* The defendant and the victim are intellectually disabled adults who receive services from the Department of Developmental Services (department) in a residential program operated by a third party, Riverside Community Care, with funding from the department.[2] Both individuals have legal guardians, family members in each case, who have been appointed by judges in the Probate and Family Court.[3] The parties do not dispute the following facts that resulted in the complaint for an abuse prevention order: On May 22, 2012, the defendant went upstairs to a hallway outside the victim's bedroom and, during an ensuing altercation, pushed the victim into a bathroom. As a result of being pushed, the victim suffered injuries to her head, neck, and back when she fell backward into a bathtub.

The next day, the plaintiff filed her application for an abuse prevention order on behalf of the victim, which included information that the defendant and the victim are not related but live in the same household, and a description of events that had occurred the previous day. A District Court judge granted an ex parte abuse prevention order pursuant to G. L. c. 209A against the defendant on May 23, 2012. At a hearing to extend the order on June 5, 2012, the judge heard testimony from the guardians of the two women. The plaintiff testified that the

---

[2]We acknowledge the amicus brief submitted by Community Legal Aid on behalf of the plaintiff, and the amicus brief submitted by the Association of Developmental Disabilities Providers and The ARC of Massachusetts on behalf of the defendant. The Department of Developmental Services (department) did not submit a brief in this matter.

[3]The defendant's legal coguardians are her mother and sister.

victim had experienced multiple physical attacks by the defend-
ant over the prior two years in the house where they lived,
including one incident where the defendant had cornered and
had bitten the victim.[4] The plaintiff provided medical documen-
tation showing that the victim's seizures and anxiety have
increased as a result of the situation, and stated that the victim,
fearful of leaving her room, "has no life" because of her con-
cerns about being attacked.

The judge also heard testimony from the defendant's guard-
ian that the families had been trying to "work out" the situation
between the victim and the defendant, and that the incidents in
the facility concerned "both individuals having their own
individual issues that are not working out in the house."[5] The
defendant's guardian stated that the defendant's intellectual dis-
abilities are "supposed to be addressed by [the staff] . . . to
keep both individuals safe," and that the residents of the home,
who are assigned to the facility, are not in "an ordinary family
situation." The defendant's guardian also asserted that she did
not believe the protections of G. L. c. 209A governed this
situation.

The judge determined that, because the defendant and the
victim lived "in the same household," the District Court had
jurisdiction. The judge extended the initial abuse prevention
order against the defendant for one year. The defendant ap-
pealed, and we transferred the case from the Appeals Court on
own motion.

The defendant asserts, in essence, that residents in a State-
governed facility are not eligible for the protections provided by
G. L. c. 209A, because receiving services through a residential
program run by a governmental agency does not constitute
"residing together in the same household" for the purposes of
the statute. We agree.

*Discussion.* We recognize that the central issue of this case

---

[4]The plaintiff provided, and the court reviewed, photographs of some of the
victim's injuries resulting from the May 22, 2012, incident and the previous
altercations.

[5]As a result of the initial order, the defendant left the residential program
and, according to the defendant's guardian, moved with "no support from [the
department] or Riverside [Community Care]."

involves the serious and important matter of the safety of individuals with intellectual disabilities under State care, and respect the legitimate concerns of the victim's guardian for the safety of her daughter. Nonetheless, we conclude that the relationship between the defendant and the victim, in the circumstances here, is not the type of relationship contemplated by the statute.

General Laws c. 209A protects individuals suffering from abuse by "family or household members." G. L. c. 209A, § 1. The statute defines "[f]amily or household members" as

> "persons who: (a) are or were married to one another; (b) are or were residing together in the same household; (c) are or were related by blood or marriage; (d) hav[e] a child in common regardless of whether they have ever married or lived together; or (e) are or have been in a substantive dating or engagement relationship."

*Id.* At issue is the scope of the phrase "residing together in the same household."

It is undisputed that the individuals here lived in the same residential program at the time of the issuance of the abuse prevention order. The plaintiff points to several ways that this facility functions like a family household, such as through shared living spaces and house rules. The fact that the defendant and victim were in contact in these shared residential spaces, she argues, makes them household members. In its amicus brief submitted on behalf of the plaintiff, Community Legal Aid (CLA) asserts that the department's closures of larger facilities in order to create "home-like residential programs" support an interpretation of G. L. c. 209A that includes individuals residing in department facilities as household members. CLA also suggests that regulations mandating that the department provide services "in a manner that promotes . . . [a] home with a design" accounting for client privacy and other rights indicates that a residential facility such as the one here constitutes a household under the statute. 115 Code Mass. Regs. §§ 5.03, 5.04 (2009). The department's mission statement, principles, and philosophy, CLA contends, make clear that its residential programs are homes and the inhabitants are "residing in the same household."

It is true that Massachusetts courts have recognized changes in traditional family structures and households for the purposes of G. L. c. 209A and have allowed individuals in various types of familial relationships to seek protection from abuse from family or household members. See, e.g., *Turner* v. *Lewis*, 434 Mass. 331, 334 (2001) (grandparent of child whose parents were not married was related by blood and could seek protections pursuant to G. L. c. 209A); *Aguilar* v. *Hernandez-Mendez*, 66 Mass. App. Ct. 367, 368-369 (2006) (girl friend of defendant's father and defendant were household members); *Sorgman* v. *Sorgman*, 49 Mass. App. Ct. 416, 417-418 (2000) (unadopted stepdaughter had requisite relationship to mother's former husband to seek abuse prevention order against him). Here, however, outside of the fact that the two individuals lived in the same facility, there is no evidence that there was a socially interdependent relationship between the two. The defendant and the victim were not voluntarily living together. They were assigned to the residence by a government agency that is mandated to give individuals in its care the "opportunity to live and receive services or supports in the least restrictive and most typical setting possible."[6] 115 Code Mass. Regs. § 5.03(2)(d) (2009). They consequently lack the " 'family-like' connection" that falls under the protection of G. L. c. 209A. See *Turner* v. *Lewis*, 434 Mass. at 334, quoting C.P. Kindregan, Jr. & M.L. Inker, Family Law and Practice, § 57.5 (2d ed. 1996) (G. L. c. 209A "has always reflected '[a] significant decision by the legislature . . . to broaden the definition of persons eligible to seek protection from abuse and domestic violence beyond the "family" and to also include other persons having some "family-like" connection' "); *Aguilar* v. *Hernandez-Mendez*, 66 Mass. App. Ct. at 370. The connection between these two individuals, and the reason they resided in the same facility, was solely their individualized service plans that had been established by the department.[7]

---

[6]Department regulations define "Least Restrictive" as "those settings, modes of service, and styles of living or working that are most similar to and most integrated with what is typical and age-appropriate in the community, and which interfere the least with the individual's independence." 115 Code Mass. Regs. § 2.01 (2012).

[7]Individual service plans establish a client's program, services, and referrals

Interpreting the definition of "household" in G. L. c. 209A to include individuals living in facilities run by the State, as the plaintiff urges, not only would potentially interfere with certain of the department's requirements to create and implement individual service plans in accordance with client needs, but also, in this case, would fail to comport with the language of the statute. "[A] statute must be interpreted 'as a whole'; it is improper to confine interpretation to the single section to be construed." *Commonwealth* v. *Keefner*, 461 Mass. 507, 511 (2012), quoting *Wolfe* v. *Gormally*, 440 Mass. 699, 704 (2004). A "general term in a statute . . . takes meaning from the setting in which it is employed." *Turner* v. *Lewis*, 434 Mass. at 334, quoting *Mahoney* v. *Baldwin*, 27 Mass. App. Ct. 778, 780 (1989). Accordingly, the phrase "residing together in the same household" in G. L. c. 209A, § 1, must be interpreted in the context of the statute's other definitions of "[f]amily or household members," which include people who are or have been married, have children together, are related by blood, or have been in a substantive dating or engagement relationship. The two individuals here are not family members, are not in a family-like relationship with each other, did not marry or have a child, and were not involved in a significant dating or engagement relationship. See G. L. c. 209A, § 1; *Turner* v. *Lewis*, *supra*. They lived together because of a State agency's decision to house them in the same residential facility in order to receive services related to their disabilities.[8] Cf. *Commonwealth* v. *Jaffe*, 398 Mass. 50, 54-55 (1986) (eight unrelated individuals

according to client needs. *Newell* v. *Department of Mental Retardation*, 446 Mass. 286, 289 n.6, cert. denied, 549 U.S. 823 (2006), citing 104 Code Mass. Regs. §§ 16.02, 16.05 (1993).

[8]The plaintiff argues that the clients' individual service plans and the department's commitment to those plans could not address the immediate threat to the victim's safety. We note that department regulations state that a "Department or provider employee is mandated to and shall immediately file a complaint . . . with the senior investigator for the region when he or she has reason to believe that there is a non-frivolous allegation of mistreatment, [or] an illegal, dangerous, or inhumane condition or incident." 115 Code Mass. Regs. § 9:06(2) (2009). If action is necessary to provide for a client's safety, the regional director must communicate that fact to a provider, who "shall be responsible for taking immediate action." 115 Code Mass. Regs. § 9:06(4) (2009). The record before us does not indicate whether these regulations were followed in this case.

living in single-family home did not constitute one family for purpose of zoning ordinance). We have not extended the protections of the statute to individuals who are in relationships or engage in conduct that falls outside the definitions enumerated in G. L. c. 209A, § 1, and we decline to do so here. See, e.g., *C.O.* v. *M.M.*, 442 Mass. 648, 654-655 (2004) (insufficient evidence to support finding of "substantive dating relationship," within context of statute, between defendant and plaintiff's daughter).

Our conclusion is in accord with the statute's purpose, to prevent violence in the family setting.[9] See *Champagne* v. *Champagne*, 429 Mass. 324, 327 (1999) ("the Commonwealth's public policy against domestic abuse [is] preservation of the fundamental human right to be protected from the devastating impact of family violence"). "The Legislature did not intend the statute to apply to acquaintance or stranger violence, nor did it intend to cover the myriad of relationships that exist . . . ." *C.O.* v. *M.M.*, 442 Mass. at 653. Our conclusion is supported by the fact that the Legislature presumably enacted G. L. c. 258E, which "allow[s] individuals to obtain civil restraining orders against persons who are not family or household members," to close the gap left by G. L. c. 209A. *O'Brien* v. *Borowski*, 461 Mass. 415, 419 (2012). See *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994) (Legislature is presumed to be aware of existing statutes when it enacts new statute).

The defendant has requested her record be expunged. General Laws c. 209A, § 7, mandates that "the court shall notify the appropriate law enforcement agency in writing whenever [an abuse prevention order] is vacated and shall direct the agency to destroy all record of such vacated order and such agency shall comply with that directive." However, records of abuse prevention orders are not to be expunged from the Statewide domestic violence registry, *Vaccaro* v. *Vaccaro*, 425 Mass. 153, 156 (1997), absent a showing that the order was obtained through the com-

---

[9]Because of our conclusion, we do not determine whether there was sufficient evidence for the issuance of the order. We also do not reach other issues regarding proper procedural methods of obtaining abuse prevention orders where a plaintiff or defendant with intellectual disabilities has been appointed a legal guardian.

mission of fraud on the court. *Commissioner of Probation* v. *Adams*, 65 Mass. App. Ct. 725, 725 (2006). See Trial Court Guidelines for Judicial Practice: Abuse Prevention Proceedings § 6:04, at 122-123 (Sept. 2011). Thus, because the abuse prevention order here was not obtained through any fraud on the court, we do not direct the District Court to order expungement of the defendant's record.

*Conclusion.* We remand to the District Court for entry of an order to vacate the abuse prevention order against the defendant.

*So ordered.*