ORLA O. vs. PATIENCE P., 100 Mass. App. Ct. 126

 
 ORLA O. vs. PATIENCE P.

100 Mass. App. Ct. 126
 April 8, 2021 - August 12, 2021

Court Below: Juvenile Court, Worcester Division
Present: Neyman, Sacks, & Lemire, JJ.

 

Civil Harassment. Harassment Prevention. Protective Order.

This court vacated a civil harassment prevention order pursuant to G. L. c. 258E that had been extended by a Juvenile Court judge, where the conduct of the juvenile defendant, who engaged in one continuous event over a very brief period (i.e., confronting, threatening, and following the plaintiff in a shopping mall as she tried to flee, and then forcing her into a bathroom, locking her in, assaulting her, and threatening to stab her if she told anyone what had happened), failed to satisfy the threshold requirement of having committed three or more separate acts of harassment within the meaning of the statute. [127-130] Sacks, J., dissenting.

COMPLAINT for protection from harassment filed in the Worcester Division of the Juvenile Court Department on August 9, 2019.

 A hearing to extend the harassment prevention order was had before Carol A. Erskine, J.

 Taylor Henley, Committee for Public Counsel Services, for the defendant.

 Gregory A. Geiman for the plaintiff.

 NEYMAN, J. The issue before us is whether the juvenile defendant committed three or more separate acts of harassment within the meaning of G. L. c. 258E, § 1. Because the defendant engaged in one continuous event over a very brief period, we conclude that the harassment prevention order must be vacated and set aside.

 Background. We recite the Juvenile Court judge's essential factual findings, none of which is challenged as clearly erroneous. [Note 1] On August 6, 2019, the defendant and two other girls confronted the plaintiff at a shopping mall. [Note 2] The defendant and the other girls told the plaintiff to go to the parking lot because 

 Page 127 

they wanted to fight her. When the plaintiff refused and attempted to walk away, the defendant and the other girls followed her. The plaintiff walked into a nearby "family bathroom . . . to try and get away from the other girls." When she then tried to leave the bathroom, the defendant and the other girls pushed her back inside; they followed her into the bathroom and locked the door. The defendant and the other girls then kicked, punched, and otherwise physically harmed the plaintiff. The defendant "smashed [the plaintiff's] head into the wall," causing her to bleed, and continued to punch her. Eventually, a mall employee "walked in on the interaction and brought security to the scene." While "the other girls were being removed from the family bathroom," the defendant threatened to stab the plaintiff "if she told anyone what had happened." [Note 3]

 The plaintiff filed a complaint under c. 258E and obtained a temporary order. After an evidentiary hearing at which both parties appeared, the judge extended the order, ruling that the above conduct constituted not one continuous act but "multiple acts of various types even though it occurred over a single period of time." The defendant appealed. 

 Discussion. Chapter 258E defines "harassment" in pertinent part as "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property." G. L. c. 258E, § 1. See O'Brien v. Borowski, 461 Mass. 415, 419-420, 426 (2012). The essential question in this case is whether the defendant's conduct constituted merely one continuous act of harassment, [Note 4] as she contends, or, instead, three or more acts of harassment, albeit close in time to one another, as the judge ruled.

 Page 128 

 Two critical principles guide our analysis in determining whether the defendant's actions constituted separate acts of harassment. First, "one continuous act cannot be divided into multiple discrete acts in order to satisfy the requirements of G. L. c. 258E, § 1." F.K. v. S.C., 481 Mass. 325, 333 (2019). Second, harassing conduct that occurs "within a very short period of time" has been held to constitute one continuous act of harassment in certain circumstances. Smith v. Mastalerz, 467 Mass. 1001, 1001 (2014). Neither Smith, supra, nor F.K., supra, requires that acts must be separated by any particular amount of time in order to be distinguished from one another. That notwithstanding, the temporal proximity of events remains an important part of our inquiry. See Smith, supra.

 Here, the defendant, assisted by two others, confronted the plaintiff at a shopping mall, threatened her, followed her "down the hall" as she tried to flee, forced her into the bathroom, locked her in, physically assaulted her, and threatened to stab her "if she told anyone what had happened." The entire event occurred over what appears to be a ten- to eleven-minute period. There is no dispute that the acts at issue occurred "within a very short period of time." Smith, 467 Mass. at 1001. There is also no dispute that the conduct was continuous in that it occurred without any temporal or material pause or interruption. Accordingly, the defendant's "conduct, troubling and offensive as it was, failed to satisfy the threshold requirement of G. L. c. 258E, § 1." F.K., 481 Mass. at 334. 

 The dissent nonetheless concludes that although acts of the same type occurring close together in time cannot be considered separate acts, the acts in the present case "were of three different types," post at 130, and thus were by their nature three distinct acts. In other words, the dissent contends that different types of conduct -- even continuous conduct that occurs within a very short period -- may satisfy the separate acts requirement of c. 258E. 

 Neither the language of the statute, nor our case law, comport with such an interpretation. In F.K., 481 Mass. at 332, the Supreme Judicial Court (SJC) held only that "[o]ne continuous act cannot be parsed into its constituent parts." The SJC did not hold in that case, or any other, that one continuous act of the same type can be parsed into its constituent parts. Thus, the dissent's view 

 Page 129 

contravenes the SJC's clear admonition. See id. at 332-333. [Note 5] Moreover, the effort to separate conduct by the type of act creates an arbitrary and unconvincing distinction in the application of G. L. c. 258E. [Note 6]

 In short, the plain language of the statute speaks to "[three] or more acts of willful and malicious conduct." G. L. c. 258E, § 1. Where, as here, the defendant engaged in one continuous event over a very brief period, the harassment prevention order should not have issued. [Note 7] We therefore remand the case to the Juvenile Court for entry of an order vacating and setting aside the harassment prevention order, and for further actions required by G. L.

 Page 130 

 c. 258E, § 9. [Note 8], [Note 9]

So ordered.

 SACKS, J. (dissenting). I respectfully disagree with the majority's conclusion that the defendant committed only a single, indivisible act of harassment for c. 258E purposes. [Note Dissent-1] Although the defendant's acts occurred close together in time, they were of three different types, each intended to produce a different one of the harms expressly targeted by the statute: fear, or abuse, or intimidation. See G. L. c. 258E, § 1. They were thus three statutorily distinct acts of harassment, justifying the judge's order. Moreover, the acts appear to have constituted at least four separate criminal offenses, and our criminal law recognizes that a single, brief course of conduct aimed at a single victim may 

 Page 131 

comprise multiple, easily distinguishable, and independently punishable acts. The majority offers no reason why c. 258E should not be applied in similar fashion.

 1. Distinct acts under c. 258E. The defendant committed three acts intended to produce discrete harms that c. 258E itself recognizes as separate. First, after the plaintiff refused to fight her, the defendant pursued the plaintiff through the mall and into the bathroom -- an act intended to cause the plaintiff fear of physical harm. Second, the defendant physically battered the plaintiff, including by smashing her head into a wall -- an act intended to cause abuse, defined in pertinent part as "attempting to cause or causing physical harm to another." G. L. c. 258E, § 1. Third, the defendant threatened to stab the plaintiff if she told anyone about what had happened -- an act intended to cause intimidation, i.e., to put the plaintiff in fear of physical harm in order to deter future conduct. [Note Dissent-2]

 These acts, despite occurring close together in time, were, by their nature and in light of the words of c. 258E itself, three conceptually separate acts. No doubt, "[o]ne continuous act cannot be parsed into its constituent parts so as to satisfy G. L. c. 258E, § 1." F.K. v. S.C., 481 Mass. 325, 332 (2019). But, as the judge here observed, threatening to stab the plaintiff if she told anyone what had happened is not merely "a parsed out piece of [the defendant] slamming the plaintiff's head into the wall." 

 Unlike the majority, I do not view this case as controlled by Smith v. Mastalerz, 467 Mass. 1001 (2014), and F.K., supra, and I see no reason to extend the holdings in those cases to govern the quite different situation presented here. In Smith, supra, the defendant drove past the plaintiff at her home three times in quick succession. The court decided that "[i]n the circumstances here, where there was no evidence refuting the defendant's claim that he lived down the street from the plaintiff, we conclude that driving by the plaintiff's home within a very short period of time was one continuous act" rather than "three separate acts of 

 Page 132 

harassment." Id. [Note Dissent-3] 

 In F.K., 481 Mass. at 326-327, the defendant recorded a song that referenced the plaintiff while threatening physical harm; the defendant then made the song available on the Internet website SoundCloud and circulated to his friends who were SoundCloud members a link to the song on that website. Third parties then told the plaintiff to listen to the song on SoundCloud, which he did. Id. at 327-328. The court first determined that "dividing the defendant's 'one song' into many 'individual lyrics' for the purpose of finding separate acts of harassment [was] impermissible," because, as in Smith, 467 Mass. at 1001, "one continuous act cannot be divided into multiple discrete acts in order to satisfy the requirements of G. L. c. 258E, § 1." F.K., supra at 333. The court next determined that the mere recording of the song did not constitute a separate act of harassment, "[b]ecause a song recorded in private, without more, cannot 'in fact cause' intimidation, abuse, damage to property, or fear of physical harm or damage to property." [Note Dissent-4] Id. at 334, quoting G. L. c. 258E, § 1. "A recorded song may constitute an act of harassment, for the purposes of G. L. c. 258E, § 1, only when it is distributed to others." F.K., supra. Finally, the court determined that the defendant's acts of distributing the song, first by posting it on the Internet and then by sharing the link with his friends, were "two acts in close succession" that should be considered "one continuous act." Id. 

 Both Smith and F.K. support the proposition that a continuous series of similar acts -- such as driving by the plaintiff's house three times in Smith, or singing multiple lyrics in the same song or using two interconnected distribution methods for that song in F.K. -- cannot be arbitrarily subdivided to create three or more acts in order to satisfy the definition of harassment. However, neither Smith nor F.K. requires that all acts, no matter how dissimilar, must be separated by some particular amount of time in order to be distinguished from one another for c. 258E purposes. 

 Page 133 

 Moreover, the language of c. 258E strongly suggests otherwise. The definition of harassment in G. L. c. 258E, § 1, was based upon, but conspicuously omits certain important portions of, the definition of harassment contained in the criminal harassment statute, G. L. c. 265, § 43A. See O'Brien v. Borowski, 461 Mass. 415, 419-420 (2012). Unlike the latter statute -- which explicitly requires that, to constitute harassment, the "pattern of conduct or series of acts" must occur "over a period of time" -- the phrases "pattern of conduct" and "over a period of time" do not appear in G. L. c. 258E, § 1. I cannot help but view the Legislature's omission of these phrases as deliberate. See J.C. v. J.H., 92 Mass. App. Ct. 224, 231 (2017) (in c. 258E case, applying principle that "[t]he omission of particular language from a statute is deemed deliberate where the Legislature included such omitted language in related or similar statutes" [quotation and citation omitted]).

 It follows that the Legislature did not intend to require a defendant's acts to form any particular pattern, or to be separated by any particular amount of time, in order to constitute harassment under c. 258E. Although "harassment" might be assumed at first blush to involve some pattern of acts repeated over a sufficient period of time to have predictive value regarding the defendant's future conduct if not enjoined, that is not how the Legislature chose to define the term in c. 258E. And "[a] [statutory] definition which declares what a term means . . . excludes any meaning that is not stated." Perez v. Bay State Ambulance & Hosp. Rental Serv., Inc., 413 Mass. 670, 675 (1992), quoting Colautti v. Franklin, 439 U.S. 379, 392393 n.10 (1979). [Note Dissent-5] Nothing in the definition requires that three acts of different types must occur over a period of time, or must be viewable as a pattern, in order to entitle the plaintiff to c. 258E protection. We should not read additional limitations into the definition that the Legislature did not see fit to put there.

 This approach comports with what I take to be one purpose of c. 258E's three-or-more-acts requirement: to ensure that courts are not asked to intervene by issuing c. 258E orders unless the alleged harassment rises to a level of seriousness that warrants both the use of scarce judicial resources and the potential criminal

 Page 134 

 and collateral consequences to the defendant. [Note Dissent-6] There is no dispute that the requisite level of seriousness may be attained by repeated acts intended to cause only a single type of statutorily-targeted harm -- i.e., intended to cause only "fear," or only "intimidation," or only "abuse," or only "damage to property" -- provided that such acts occur over more than a short period of time. [Note Dissent-7] But, particularly where the Legislature purposefully declined to require that the three or more acts constitute a "pattern" occurring "over a period of time," see supra, I see no reason why the requisite level of seriousness may not also be attained, as in this case, by the commission of three acts intended to produce three different types of statutorily-targeted harm, even if committed within a short period of time. [Note Dissent-8]

 Other language in c. 258E confirms that serious conduct need not be repeated over time, or establish a "pattern" and thereby show that similar conduct is likely in the future, in order to constitute harassment warranting a c. 258E order. To the contrary, a single serious act may satisfy the definition. Specifically, "an act that . . . by force, threat or duress causes another to involuntarily

 Page 135 

 engage in sexual relations" constitutes harassment. G. L. c. 258E, § 1. So does "an act that constitutes a violation of section 13B, 13F, 13H, 22, 22A, 23, 24, 24B, 26C, 43 or 43A of chapter 265 or section 3 of chapter 272." [Note Dissent-9] Id. Where the Legislature has specified that a single such act constitutes harassment, I fail to see why three serious and statutorily distinct acts, even if committed in prompt succession, do not also constitute harassment. Nothing in c. 258E requires that victims of such acts be denied the statute's protections.

 2. Distinct acts under criminal law. Indeed, it would be odd to treat the defendant's course of conduct here, which appears to have included at least four distinct criminal offenses -- threatening to commit a crime, kidnapping, assault and battery by means of a dangerous weapon (the bathroom wall), [Note Dissent-10] and witness intimidation -- as nevertheless constituting only a single act for c. 258E purposes. [Note Dissent-11] None of these crimes is a lesser included offense or duplicative of any of the other three. "[W]here . . . neither crime is a lesser included offense of the other, multiple punishments are permitted even where the offenses arise from the very same criminal event." Commonwealth v. Vick, 454 Mass. 418, 436 (2009). [Note Dissent-12] The acts were not "so closely related in fact as to constitute in substance but a single crime" (citation omitted), id. at 435, and -- unlike the majority's hypothetical scenario of three assaults against the same plaintiff in a ten-minute period, see ante at note 6 -- they would present no question regarding the appropriate unit of prosecution or the continuous offense doctrine. See Commonwealth v. Horne, 466 Mass. 440, 450 (2013) ("Relevant to discerning a criminal statute's unit of prosecution is the continuous offense doctrine, which recognizes that certain criminal

 Page 136 

statutes are intended to punish just once for a continuing course of conduct, rather than for each and every discrete act comprising that course of conduct"). [Note Dissent-13] 

 Of course, these principles from the criminal context do not directly govern here. But they illustrate that the law is quite accustomed to treating multiple acts involving different means and ends as separate, rather than as a single continuous act, even when committed close together in time and against the same victim. Adopting the same approach to G. L. c. 258E would not create "an arbitrary . . . distinction," ante at 129, but instead would further c. 258E's protective purposes. Moreover, that the acts here appear to have been distinct criminal offenses is another indication that the defendant's course of conduct -- in contrast to the noncriminal conduct at issue in Smith and F.K. -- was sufficiently serious to warrant c. 258E relief. [Note Dissent-14]

 Conclusion. Absent anything in the language or purpose of c. 258E suggesting that three different types of harassing acts -- even those constituting separate crimes -- must be treated as a single act when committed close together in time, I would not 

 Page 137 

read such a requirement into the statute and, instead, would affirm the judge's order. [Note Dissent-15] I therefore respectfully dissent.

FOOTNOTES
[Note 1] We acknowledge the judge's thorough and clear findings of fact and rulings of law. 

[Note 2] On July 6, 2019, the two other girls, friends of the defendant, had sent the plaintiff text messages that contained threatening language. The next day, the plaintiff received a similar text message from one of the girls. Neither party attributes these text messages to the defendant, and it is not disputed that the text messages did not constitute the acts of harassment at issue here. We reference these facts solely to provide context. 

[Note 3] The defendant also told the plaintiff that if she did not wash the blood from her face, the defendant would put her head in a toilet. 

[Note 4] We use the phrase "act of harassment" as shorthand for an act of willful and malicious conduct of the type described in G. L. c. 258E, § 1. We recognize that only where three or more such acts have occurred, and the acts taken together have caused fear, intimidation, abuse, or damage to property, has harassment occurred within the meaning of the statute. See G. L. c. 258E, § 1; O'Brien, 461 Mass. at 426 n.8. The shorthand is in wide use. See, e.g., id. at 420, 429-430; R.S. v. A.P.B., 95 Mass. App. Ct. 372, 375-376 (2019). 

[Note 5] The dissent also attempts to distinguish the present case from the SJC's holding in F.K., 481 Mass. at 327, 333-334, on the basis that the acts of harassment at issue in that case were not "criminal." We are aware of no language in the statute or our case law interpreting c. 258E that support such a distinction. Moreover, such an interpretation would contradict the plain language of the statute, which contains an explicit definition of "harassment." See G. L. c. 258E, § 1 (defining "harassment" in pertinent part as "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property"). 

[Note 6] A simple example elucidates the arbitrary and random impact of the dissent's view. In the first scenario, assume that a defendant (1) threatens the plaintiff in a public place; (2) as the plaintiff leaves the area, the defendant follows and punches the plaintiff; and (3) as the defendant begins to depart, he threatens the plaintiff with violence. In the second scenario, assume, instead, that a defendant (1) physically assaults the plaintiff in a public place; (2) as the plaintiff leaves the area, the defendant follows and assaults the plaintiff again; and (3) then as the defendant begins to depart, he assaults the plaintiff one final time. Assume further that both scenarios occur over ten minutes with no interruptions. Under the caselaw, neither scenario suffices to invoke the protections under c. 258E because both concern one continuous act. See F.K., 481 Mass. at 333; Smith, 467 Mass. at 1001. The dissent, however, would extend the protection of c. 258E to the plaintiff in the first scenario, but not the plaintiff in the second scenario, who suffered equal or perhaps worse harassment, solely on the basis that the conduct involved different types of acts. There is nothing in the statute or our precedent that supports this distinction. To the contrary, our case law has recognized that three separate instances of the same type of conduct warrant application of c. 258E. See, e.g., A.T. v. C.R., 88 Mass. App. Ct. 532, 535-538 (2015) (affirming issuance of c. 258E order based on three instances of threats). 

[Note 7] Even assuming arguendo that the defendant's threat to stab the plaintiff could be viewed as separate from the assault and battery so as to constitute a second act of harassment, the evidence still does not support a finding of the three requisite acts of harassment. 

[Note 8] To be clear, we view the conduct alleged in the present case as serious and concerning. Although the allegations present compelling policy reasons for the application of the protections of c. 258E, it is the role of the Legislature to amend the plain language of the statute, should it wish to extend those protections. In addition, we note that the defendant is presently facing criminal charges for the conduct discussed, supra. Although we do not express any view regarding the merits of that case, we further note that there may be other potential protections available to the plaintiff during the pendency of that case. See, e.g., G. L. c. 276, §§ 58A, 58B, 76, 87. See also Commonwealth v. Preston P., 483 Mass. 759, 762-765 (2020); F.K., 481 Mass. at 326 (noting "that a single act of harassment may be sufficient for the Superior Court to issue a civil injunctive order pursuant to its equity jurisdiction"). 

[Note 9] The defendant also argues that by extending the c. 258E order, the judge violated the Juvenile Court's mandate to treat juveniles that come before it "not as criminals, but as children in need of aid, encouragement and guidance." G. L. c. 119, § 53. We disagree. The defendant identifies no particular c. 258E requirement that the judge should have applied differently based on her juvenile status. That the Legislature expressly granted the Juvenile Court jurisdiction over c. 258E complaints against juveniles, see G. L. c. 258E, § 2, indicates that the Legislature "had young people's limitations and abilities particularly in mind," but did not "intend[] to put [them] beyond the reach of G. L. c. 258E." A.T. v. C.R., 88 Mass. App. Ct. 532, 538-539 (2015). See A.P. v. M.T., 92 Mass. App. Ct. 156, 161-162 (2017). 

[Note Dissent-1] Like the majority, ante at note 4, I use the phrase "act of harassment" as shorthand for an act of willful and malicious conduct of the type described in G. L. c. 258E, § 1. The statute defines "harassment" in pertinent part as "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property." G. L. c. 258E, § 1. See O'Brien v. Borowski, 461 Mass. 415, 419-420, 426 (2012). 

[Note Dissent-2] In A.T. v. C.R., 88 Mass. App. Ct. 532 (2015), we concluded that conduct that both satisfied the true threat test under O'Brien, 461 Mass. at 424, and was consistent with "putting [the plaintiff] in fear for the purpose of compelling or deterring conduct," constituted intimidation. A.T., supra at 536, quoting Commonwealth v. Gordon, 44 Mass. App. Ct. 233, 235 (1998). See O'Brien, supra. See also Ilan I. v. Melody M., 96 Mass. App. Ct. 639, 646 n.11 (2019); A.R. v. L.C., 93 Mass. App. Ct. 758, 760-761 (2018). This case similarly presents a true threat aimed at deterring conduct. 

[Note Dissent-3] In any event, there was insufficient evidence in Smith that the defendant's conduct "was wil[l]ful and malicious, directed at the plaintiff, and intended to cause, and in fact did cause, fear, intimidation, abuse, or damage to property." Smith, 467 Mass. at 1001-1002. 

[Note Dissent-4] Moreover, even apart from actual causation, see O'Brien, 461 Mass. at 426 n.8, it is difficult to see how the mere private recording of the song, without any act to disseminate it, could have been intended to cause any of the statutorily-targeted harms. Absent such intent, it could not have been an act of harassment under c. 258E. 

[Note Dissent-5] See Arias-Villano v. Chang & Sons Enterps., Inc., 481 Mass. 625, 628 (2019); Dental Serv. of Mass., Inc. v. Commissioner of Revenue, 479 Mass. 304, 307 (2018); Bulger v. Contributory Retirement Appeal Bd., 447 Mass. 651, 660 (2006). 

[Note Dissent-6] As we said in Gassman v. Reason, 90 Mass. App. Ct. 1, 8 (2016): 

"Civil harassment cases present a significant challenge in busy municipal and district courts . . . . Applications for such orders are filed by feuding neighbors, . . . expressive bar patrons, angry hockey or baseball parents, and contentious roommates, among others. . . . [Orders under G. L. c. 258E] carry significant collateral consequences for a defendant, consequences that cannot be undone completely, even when a court later determines that the order should not have issued in the first place" (citations omitted).

Thus "our appellate courts have repeatedly held . . . that conduct that might be considered harassing, intimidating, or abusive in the colloquial sense, . . . was not adequate to meet the standard spelled out in O'Brien." A.R., 93 Mass. App. Ct. at 761. See id. at 765.

[Note Dissent-7] Similarly, criminal harassment under G. L. c. 265, § 43A, has been interpreted as consisting of specified conduct on "three separate occasions" (citation omitted). Commonwealth v. Bigelow, 475 Mass. 554, 559 n.9, 561 (2016). In Bigelow, evidence of three letters sent to the victim over the course of two months, each expressing what could have been found to be true threats of physical harm, was held to be evidence of conduct on "three separate occasions" sufficient to support a conviction. See id. at 567-568, 570 n.24. See also A.S.R. v. A.K.A., 92 Mass. App. Ct. 270, 271-272, 280 (2017) (defendant's hundreds of communications over many months, containing true threats of violence, constituted criminal harassment, warranting c. 258E order). 

[Note Dissent-8] Of course, in either scenario, the three acts taken together must actually cause one or more of these types of harm in order to constitute harassment. See O'Brien, 461 Mass. at 426 n.8. 

[Note Dissent-9] The listed statutes concern various sex offenses, with the exception of G. L. c. 265, § 43 (stalking) and § 43A (criminal harassment). See A.S.R. v. A.K.A., 92 Mass. App. Ct. 270, 274-275 (2017). A plaintiff seeking a c. 258E order based on commission of such a crime need only prove by a preponderance of the evidence that the defendant committed it; a criminal conviction or adjudication of delinquency is not required. See F.A.P. v. J.E.S., 87 Mass. App. Ct. 595, 599-600 (2015). See also A.P. v. M.T., 92 Mass. App. Ct. 156, 162-163 (2017). 

[Note Dissent-10] See Commonwealth v. Sexton, 425 Mass. 146, 150-152 (1997). 

[Note Dissent-11] I say "appears" because the judge's findings did not expressly address whether all the elements of each crime were present. 

[Note Dissent-12] In Vick, 454 Mass. at 419-420, the court affirmed the defendant's convictions of assault and battery by means of a dangerous weapon causing serious bodily injury, and armed assault with intent to murder, based on the defendant having shot the victim once in the chest. 

[Note Dissent-13] See also Commonwealth v. Traylor, 472 Mass. 260, 268 (2015), quoting Commonwealth v. Donovan, 395 Mass. 20, 28 (1985) (double jeopardy issues may arise where "a single statute is involved and the issue is whether two [or more] discrete offenses were proved under that statute rather than a single continuing offense"). 

[Note Dissent-14] In Smith, 467 Mass. at 1001, the three acts of driving by the plaintiff's house, however unwanted, plainly were not criminal. And in F.K., 481 Mass. at 327, the song lyrics included what could be considered threats to commit crimes, but there was no finding or evidence that the defendant intended directly or indirectly to communicate the threats to the plaintiff, as is required for the crime of threatening. See Commonwealth v. Maiden, 61 Mass. App. Ct. 433, 435 (2004). The court in F.K. merely assumed without deciding, because the defendant conceded it, that the defendant's posting of the song on the Internet constituted an act of harassment. F.K., 481 Mass. at 333. Although harassment requires that the acts be "aimed at a specific person," G. L. c. 258E, § 1, the record in F.K. "contain[ed] no indication that the defendant directed anyone to notify [the plaintiff] of the song. Rather, [the plaintiff] was informed about the song by his friends, acting of their own volition. Indeed, the defendant removed the song from the Internet two hours after posting it because [the plaintiff's] friends were threatening 'to beat him up.'" F.K., supra at 334. Thus it is far from clear that the acts at issue in F.K. were criminal. 

[Note Dissent-15] To be sure, as the majority observes, ante at note 8, the pendency of criminal or delinquency charges may make other protections available for the plaintiff, which could include a no-contact and stay-away order issued at the outset of such a proceeding. But the possibility of another remedy does not itself support the denial of c. 258E relief (nor do I read the majority to suggest otherwise). As noted supra, the commission of any one of various specified crimes -- primarily sex offenses -- is expressly defined as harassment under c. 258E and may support issuance of a G. L. c. 258E order. The victim of such a crime is not cut off from c. 258E relief merely because similar protection may also be available in a criminal or delinquency proceeding, if and when the Commonwealth chooses to initiate such a proceeding. See Vera V. v. Seymour S., 98 Mass. App. Ct. 315, 319 (2020) (explaining why, in analogous G. L. c. 209A context, "conditions of pretrial release, even if they encompass the same conditions as an abuse prevention order, are no substitute for an abuse prevention order," and did not justify denial of plaintiff's request for such order). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.