NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-944                                    Appeals Court

S.J.  vs.  T.S.

No. 22-P-944.

Middlesex.     May 15, 2023. – August 28, 2023.

Present:  Sacks, Shin, & D'Angelo, JJ.

Abuse Prevention.  Protective Order.  Practice, Civil, Motion to
     dismiss.  Words, "Household members."


Complaint for protection from abuse filed in the Newton
Division of the District Court Department on March 11, 2022.

A hearing to extend the abuse protection order was had
before Jennifer D. Queally, J.


Kevin M. Dwyer, Jr., for the defendant.


SHIN, J.  The defendant appeals from an extension of an

abuse prevention order granted to the plaintiff under G. L.

c. 209A.[1]  The sole issue presented is whether the parties -- who

_____

[1] The defendant also appealed from the earlier entered ex
parte order, but that order was superseded by the order after
notice and so we do not address it separately.  See V.M. v.
R.B., 94 Mass. App. Ct. 522, 524-525 (2018).  The plaintiff did
not participate in the appeal, as is his right.

were college roommates when the events underlying the order occurred -- were "household members" within the meaning of G. L. c. 209A. We conclude they were not and thus vacate the extension order.

Background. The parties were first-year college roommates from approximately January to March of 2022. They had no prior relationship and were assigned to be roommates by the university.

On March 11, 2022, the plaintiff applied for an abuse prevention order, attaching an affidavit in which he asserted the following facts. The previous day, the plaintiff was in the parties' shared dormitory room when the defendant approached and hit him on the side of the head. The plaintiff left the room and returned after some time; the defendant then picked him up by his shirt, pushed him against the wall, put him on the ground, and dragged him to the center of the room. The plaintiff asked what he had done and told the defendant to stop, but the defendant did not respond and began to hit the plaintiff on the sides of the chest. The defendant stopped momentarily when the plaintiff said he would leave the room. The defendant "resumed his assault," however, when the plaintiff asked for permission to retrieve his laptop before leaving.

After an ex parte hearing, a District Court judge issued a temporary abuse prevention order and scheduled the matter for a

two-party hearing on March 25, 2022.  On the day of the hearing, the defendant moved to dismiss, arguing that the parties did not qualify as "household members" under G. L. c. 209A, § 1.  A second judge presided over the two-party hearing, which was devoted, more or less exclusively, to the motion to dismiss. While noting that the parties were "just college roommates who were placed together by the university," the judge nonetheless denied the motion to dismiss and extended the temporary order to August 29, 2022.[2]

Discussion.  General Laws c. 209A, § 3, provides that "[a] person suffering from abuse from an adult or minor family or household member may file a complaint" for an abuse prevention order.  The term "[f]amily or household members" is defined in G. L. c. 209A, § 1, as:

> "persons who:  (a) are or were married to one another;
> (b) are or were residing together in the same household;
> (c) are or were related by blood or marriage; (d) hav[e] a
> child in common regardless of whether they have ever
> married or lived together; or (e) are or have been in a
> substantive dating or engagement relationship" (emphasis
> added).

It is undisputed that the parties here have never been married, have never been related by blood or marriage, have no child in common, and have never dated or been engaged.  Thus, the

---

[2] The judge chose this date after the defendant's attorney represented that the defendant had taken a leave of absence from the university and would not be returning to campus until at least the fall semester.

question is whether they were "residing together in the same household" when the alleged abuse occurred.

Since G. L. c. 209A was enacted, the Legislature has broadened the statute's coverage to "address violence stemming from relationships which may not be considered traditional 'family or household' associations." C.O. v. M.M., 442 Mass. 648, 653 (2004). Courts have followed by "recogniz[ing] changes in traditional family structures and households for the purposes of G. L. c. 209A and have allowed individuals in various types of familial relationships to seek protection from abuse from family or household members." Silva v. Carmel, 468 Mass. 18, 22 (2014) (collecting cases). Still, the purpose of G. L. c. 209A remains "to prevent violence in the family setting." Id. at 24.

With this statutory purpose in mind, the court held in Silva, 468 Mass. at 23-24, that the phrase "residing together in the same household" takes meaning from the other categories of "[f]amily or household members" delineated in G. L. c. 209A, § 1 -- i.e., married or once married persons, relatives by blood or marriage, persons who have children together, and persons who have been in a substantive dating or engagement relationship. Viewing the phrase in that context, the court concluded that the parties -- who were intellectually disabled adults living in the same State-licensed residential facility -- did not qualify as "household members" under the statute. See Silva, supra. While

acknowledging that the facility had "home-like" features, such as shared living spaces and house rules, id. at 21, the court found that to be insufficient to trigger the statute's protections where there was no evidence of a "'family-like' connection" between the parties.  Id. at 22.

At the two-party hearing in this case, the judge suggested that Silva was distinguishable because there "the [S]tate put [the parties] together," whereas here the parties were voluntarily attending the university.  But, while we agree that the voluntariness of the living arrangement is a relevant factor, we do not read Silva to say that it is the dispositive factor.  Nor do we think it should be.  Rather, the wide variety of relationships and living arrangements existing today calls for a more flexible approach in determining whether two parties qualify as persons "residing together in the same household" under G. L. c. 209A.  This determination should be made on a case-by-case basis after consideration of all relevant factors. Cf. C.O., 442 Mass. at 651 ("existence of a 'substantive dating relationship' is to be determined on a case-by-case basis"). These factors may include (1) whether the living arrangement was voluntary, (2) the nature of the physical living space, including how much of it was shared, (3) the length of the parties' relationship, and (4) the nature of their relationship and interactions, including whether they engaged in communal

living activities.  No factor is dispositive, and the ultimate inquiry for the judge is whether the parties have a "'family-like' connection that falls under the protection of G. L. c. 209A."  Silva, 468 Mass. at 22.

Turning to the facts of this case, we conclude that the parties were not persons "residing together in the same household" at the time of the alleged abuse.  Although the parties may have been attending the university voluntarily, they were not living together voluntarily; they were assigned to the same dormitory room by the university.  In addition, they had been roommates for only a short time (about two months), and there is no evidence in the record about the physical layout of the room, such as whether it was a single room or more like a suite.  Even presuming that much of it was common living space, there is no evidence that the parties prepared and ate meals together, engaged in other communal living activities, or had a "socially interdependent relationship."  Silva, 468 Mass. at 22. In fact, the plaintiff presented no evidence of any relationship he had with the defendant beyond sharing a dormitory room.  As the plaintiff thus failed to establish that he had a "'family-

like' connection" with the defendant, id., he was not eligible to seek protection under G. L. c. 209A.[3]

Conclusion.  The abuse prevention orders entered against the defendant on March 11, 2022, and March 25, 2022, are vacated.  The case is remanded to the District Court for the entry of an order directing the appropriate law enforcement agency to destroy all records of the vacated orders in accordance with G. L. c. 209A, § 7, third par.

So ordered.

---

[3] This does not leave parties in the plaintiff's situation without a remedy.  Had the plaintiff sought protection under G. L. c. 258E -- which was enacted "to close the gap left by G. L. c. 209A," Silva, 468 Mass. at 24 -- he would not have had to show that he and the defendant were "household members" (although he would have needed to prove "harassment" within the meaning of G. L. c. 258E, § 1).  Also, as the plaintiff acknowledged at the hearing, he could have requested a housing transfer from the university.  Additional potential remedies are referenced in Orla O. v. Patience P., 100 Mass. App. Ct. 126, 130 n.8 (2021).